UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RHONDA WATSON,

       *Plaintiff*,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

       *Defendant*.

Civil Action No. 1:20-cv-01363 (CJN)

**MEMORANDUM OPINION**

Rhonda Watson seeks reversal of the Social Security Administration's denial of her claim for disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401–33. Watson contends that the Administrative Law Judge erred in assessing her residual functional capacity and her subjective complaints, and she seeks reversal or remand. *See generally* Pl.'s Mot., ECF No. 10. The Commissioner seeks affirmance. *See generally* Def.'s Mot., ECF No. 11. Upon consideration of the motions and the administrative record, the Court will deny Watson's motion for judgment of reversal and grant the Administration's motion for judgment of affirmance.

**Background**

Watson injured her lower back while working in 2013. Tr. 558. She continued working until approximately May 2015, when she reported worsening back pain. Tr. 256, 282. Doctors recommended surgery, which she underwent in July 2016. Tr. 406–07.

In November 2016, Watson applied for disability insurance benefits, alleging disability beginning in May 2015 due to back pain, tendonitis, diabetes, high blood pressure, and depression. Tr. 256, 281. Her application was denied initially and upon reconsideration. Tr. 187–90, 196–99.

1

She requested a hearing, which was held on May 23, 2019.  Tr. 118–61, 200.  Watson and an impartial vocational expert testified.  Tr. 118–61.  On June 14, 2019, the Administrative Law Judge issued a decision finding that Watson was not disabled.  Tr. 100–13.  The ALJ concluded that, although Watson could not perform her past relevant work, she was able to perform other jobs that are prevalent in the national economy.  *Id.*

The Appeals Council denied Watson's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1–6.

Watson then filed this suit.  Compl., ECF No. 1.  Watson moves for reversal, asserting that the ALJ erred in failing to conduct a sufficiently thorough function-by-function assessment of her residual functional capacity, and by reaching a conclusion about her subjective complaints that was contrary to the evidence.  *See generally* Pl.'s Mot., ECF No. 10.  The Commissioner seeks affirmance, arguing that the ALJ's narrative analysis of Watson's residual functional capacity was sufficient and that the ALJ's analysis of Watson's subjective complaints was supported by substantial evidence.  *See generally* Def.'s Mot., ECF No. 11.

## Legal Standards

The Social Security Act of 1935 established a framework to provide "disability insurance benefits" to eligible claimants. 42 U.S.C. § 423(a)(1)(A); *see also Kyler v. Kijakazi*, 2022 WL 1165859, at *1–3 (D.D.C. Apr. 20, 2022). The Act defines "disability" in pertinent part as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A).

The Commissioner of Social Security has promulgated regulations outlining a five-step process by which the Administration considers disability claims.  *See* 20 C.F.R. § 404.1520; *Kyler*,

2022 WL 1165859, at *1–3 (D.D.C. Apr. 20, 2022).  Relevant here are steps four and five, in which the Administration evaluates the claimant's "residual functional capacity," 20 C.F.R. § 404.1520(a)(4)(iv); *see also id.* § 404.1545(a)(1) (defining "residual functional capacity" as "the most [the claimant] can still do despite [his or her] limitations"), and determines (at step four) whether the claimant can perform her "past relevant work," *id.* § 404.1520(a)(4)(iv), and (at step five) whether the claimant "can make an adjustment to other work," based on the claimant's residual functional capacity and "age, education, and work experience." *Id.* § 404.1520(a)(4)(v). In conducting this analysis, the "adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7; *see also Butler v. Barnhart*, 353 F.3d 992, 1000 (D.C. Cir. 2004).

      The Court reviews "the Commissioner's ultimate determination of disability under the familiar substantial evidence standard." *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive[.]").  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (quotation marks omitted); *see Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Thus, while the Court "must carefully scrutinize the entire record, . . . [it] assess[es] only whether the ALJ's finding that [the claimant] is not [disabled] is based on substantial evidence and a correct application of the law." *Butler*, 353 F.3d at 999.  In applying this standard, the Court must be mindful of the harmless-error rule.  *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

Analysis

I.    **The ALJ's Analysis of Watson's Residual Functional Capacity Was Supported By Substantial Evidence and Was Otherwise In Accordance With Law.**

The ALJ's assessment of Watson's residual functional capacity consists of six pages. Tr. 105–10. The ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally reach overhead with the left and nondominant arm and frequently reach in all other directions with the same left arm. She can only frequently reach in all directions with the right and dominant arm. She can only frequently, bilaterally, handle, finger, and feel. She can only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. She can occasionally be exposed to moving mechanical parts and unprotected heights. She is limited to simple, routine tasks, not performed at a production pace, but performed in two-hour increments following which the claimant will need a break of 10-to-15 minutes that can be accommodated during normal work breaks. Further, she can only occasionally adjust to changes in workplace settings.

Tr. 105. The Commissioner adopted the ALJ's conclusion and analysis. Watson makes a number of arguments about the insufficiency of this portion of the ALJ's opinion.[1]

*"Production Pace"*

Watson argues that the ALJ inadequately explained the conclusion that Watson could perform simple routine tasks not performed at a production pace. Tr. 105 ("[Watson] is limited to simple, routine tasks, not performed at a production pace, but performed in two-hour increments following which the claimant will need a break of 10-to-15 minutes that can be accommodated during normal work breaks."). Watson contends the ALJ failed to explain how the evidence led to this conclusion and also failed to explain what was meant by "production pace." Watson cites several out-of-Circuit decisions suggesting the terms "production rate" and "[]production oriented

---

[1] At times, Watson's briefs consist of lengthy quotations to cases and the record with little to no argumentation about how they relate. It is not the role of the Court to divine merits arguments on behalf of either party.

work" are not self-explanatory nor clearly defined and so make it difficult to know if they are supported by substantial evidence. *See Thomas v. Commissioner*, 916 F.3d 307, 312–13, (4th Cir. 2019); *Perry v. Berryhill*, 765 Fed. App'x. 869, 872 (4th Cir. 2019).

The government disagrees. It argues that cases like *Thomas* and *Perry* did not advance a categorical rule. In those cases, the government argues, the courts could not understand "what the ALJ intended" by the use of phrases like "production rate" or "production rate." *Perry*, 765 F. App'x at 872; *Thomas*, 916 F.3d at 312. But here, the government argues, the ALJ affirmatively defined the functional capacity—Plaintiff had the ability to perform simple, routine tasks "in two-hour increments" before requiring a 10-to-15 minute break that could "be accommodated during normal work breaks," and further involved only occasional changes in the workplace setting. Tr. 105. Put another way, the government argues the phrase "production pace" is simply used in the negative as to what Watson *cannot* do, so does not inject ambiguity into the ALJ's conclusion of what she *can* do.

The Court agrees that the "production pace" term does not render the ALJ's opinion impermissible. As an initial matter, the Court does not find the phrase "production pace" particularly challenging to understand. Agencies are not restricted to using nouns defined in their regulations— ordinary dictionaries are fine too. A reasonable person would understand that the phrase "production pace" refers to the speed of a manufacturing environment, especially relatively fast-paced assembly-line work. *See, e.g.*, *Production*, *Webster's New Universal Unabridged Dictionary*, (2nd ed. 2003) ("1. The act of producing; creation; manufacture."). In any event, the ALJ clearly stated the conclusion as to Watson's capacity; that conclusion did not turn on the definition of "production pace." The ALJ concluded that Watson "is limited to simple, routine tasks, not performed at a production pace, but performed in two-hour increments following which the claimant will need a break of 10-to-15 minutes that can be accommodated during normal work breaks. Further, she can only occasionally adjust to changes in workplace settings." Tr. 105. The ALJ used "production pace" to contrast the affirmative

5

description of what Watson can do. Because, at a minimum, the ALJ's affirmative statements describing Watson's abilities are clear, the ALJ's mere use of the phrase "production pace" does not render the analysis unreviewable.

*Mental Limitations*

Watson next contends that, although the ALJ determined Watson had moderate limitations to her concentration, persistence, and pace, the ALJ failed to include any limitation to her concentration or persistence in the residual functional capacity assessment or in the hypothetical question to the vocational expert. Watson admits that the Administration routinely finds limitations to psychiatric impairments are adequately addressed by considering limitations to simple, routine, repetitive tasks. But Watson marshals out of Circuit precedent to suggest that such a limitation to simple tasks insufficiently accounts for mental impairments. *See, e.g.*, *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008). And another Judge in this District has explained that restrictions to simple tasks insufficiently account for limitations in concentration because "'the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.'" *Petty v. Colvin*, 204 F. Supp. 3d 196, 206–07 (D.D.C. 2016) (quoting *Mascio*, 780 F.3d at 638). Watson thus argues that because the ALJ did not include her concentration or persistence limitations in the residual functional capacity conclusions or the ALJ's question to the vocational expert, the ALJ's analysis was defective. *See* SSR 96-8p, 1996 WL 374184, at *1.

The government contends that the ALJ had good reason not to include Watson's mental limitations in the capacity conclusion or the question to the vocational expert. The government notes, as the Fourth Circuit has explained, that there is no "categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in

6

the RFC. . . . Nor do [other] circuits impose such a per se rule." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). Instead, the inquiry is, as always, a substantiality of the evidence, case-by-case approach. *Id.* Here, the government contends, the ALJ gave great weight to Dr. Heiser's opinion that Plaintiff "can carry out simple tasks on a regular basis to complete a normal workweek" despite any moderate limitations to Watson's concentration, persistence, or pace. Tr. 110, 182–83. The ALJ expressly relied on this finding in the assessment, which justified excluding the limitations from the conclusion and the question.

Watson responds that even if the government is correct that the ALJ could have relied on Dr. Heiser's opinion, the ALJ did not explain how he considered and resolved the material inconsistencies and ambiguities in the record. *See* SSR 96-8p, 1996 WL 374184, at *7 ("The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."); *see also Butler*, 353 F.3d at 1000.

The Court again agrees with the government. Even if a limitation to simple tasks may sometimes fail to account for moderate mental impairments, in this case the ALJ's analysis was sufficient. The ALJ expressly considered evidence of mental impairment in the residual functional capacity assessment. Tr. 108–10. But the ALJ simply gave greater weight to other evidence which suggested Watson was not mentally limited from performing simple, routine tasks. *Id.* This evidence included, for example, Watson's daily activities as well as the opinion evidence of Dr. Forest, to which the ALJ gave "great weight." *See* Tr. 109–10 (noting Forest found Watson to have "normal concentration" and "adequate intelligence"). This is enough evidence that could persuade a reasonable mind. *See Butler*, 353 F.3d at 999. Under the substantial evidence standard, it is inappropriate for this Court to require more.[2]

---

[2] The government also contends that an intervening regulation clarified the definition of a "moderate" limitation, thereby eliminating the concern in *Mascio* and *Petty* that someone with a "moderate" mental limitation may not be able to work even simple jobs. The 2017 clarification stated that a "moderate"

*Explanation of Working Capacity*

In an abrupt paragraph, Watson contends that the ALJ failed to explain the conclusions that Watson was capable of sustaining work for two-hour increments, that Watson required a 10-to-15 minute break thereafter, and that this could be accommodated by "normal" work breaks, and what that means.

The government argues that the ALJ's position was clear: Watson can perform unskilled work. The ALJ picked two hour increments and 10-to-15 minute breaks, the government contends, because they are part of the Administration's definition of unskilled work. *See* Program Operations Manual Systems (POMS) DI 25020.010(B)(3)(d). And the government argues that the ALJ's conclusions are supported by the evidence, including, for example, Dr. Heiser's conclusion that Watson "can carry out simple tasks on a regular basis to complete a normal workweek" despite any limitations in concentration, persistence, or pace. Tr. 110.

The Court agrees with the government that the ALJ's analysis is sufficient. Substantial evidence review does not require exhaustive explanations, or even such explanations that the Court might require on arbitrary and capricious review. Here, the ALJ did not provide a precise explanation of why Watson's capacity assessment is at 2 hours of work at a time and 10-to-15 minute breaks rather than, for example, 2.5 hours and 20 minutes or 1.5 hours and 5 minutes. But that level of detailed

---

rating means that the individual has a "fair" ability to sustain concentration, persistence, or pace "independently, appropriately, effectively" and "on a sustained basis." *See* 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(F)(2). Watson argues that relying on a 2017 regulation is impermissibly retroactive. *See* Reply at 3–5. The Court agrees with the government that the regulatory definition is an additional basis for distinguishing *Mascio* and *Petty* and concluding the ALJ's opinion is adequate. An update to a regulatory definition is not, by itself, a right to which retroactivity can even pertain. And, in any event, Watson's rights had not yet vested as she had not yet established her eligibility. *See Kyler v. Kijakazi*, 2022 WL 1165859, at *5–7 (D.D.C. Apr. 20, 2022); *see also Flemming v. Nestor*, 363 U.S. 603, 610 (1960). Watson also argues that the new regulatory definition of "moderate" is a post-hoc rationalization because the ALJ never indicated he was applying the new definition. *See* Def.'s Reply at 5–6. But requiring such an explanation would be unduly pedantic. As a matter of ordinary interpretation, ordinary readers and this Court would expect the ALJ to use up-to-date regulatory definitions unless otherwise noted.

explanation is not required. The ALJ concluded that Watson can perform at least 2 hours of work with normal 10-to-15 minute breaks, and substantial evidence supports those conclusions, including at least Dr. Heiser's analysis.[3]

*Sitting Limitation*

Watson asserts that the ALJ failed to explain why he did not include any limitation on Watson's ability to sit. Watson notes that she had been diagnosed with a lumbar spine issue and Watson had consistently complained of her difficulty sitting, standing, and walking. *See* Pl.'s Mot. at 10, ECF No. 10.

The government argues that the ALJ's opinion was sufficient. In the capacity analysis, the ALJ discussed the relevant medical evidence, including the post-surgery MRI Report which concluded that the lumbar spine issue was "very mild." And the ALJ considered Watson's subjective complaints as well as the activities Watson actually engages in, which he found inconsistent with Watson's complaints. *See* Tr. 106–08. It was only after discussing all of this evidence that the ALJ concluded that "[g]iven the totality of the evidence" Watson's degenerative disc disease and degenerative joint disease are "adequately accommodated by a restriction to sedentary work" subject to the limitations in the ALJ's assessment. Tr. 107, 108. The ALJ also noted that his conclusion accords with various opinion evidence provided in this matter, including that of the State Agency physicians' findings that Watson was able to sit for six hours. Tr. 110 (opinion evidence limiting Watson to "sedentary" work); *see also* Def.'s Mot at 21–22, n. 7 (explaining that regulations define "sedentary" work as sitting for

---

[3] Watson is correct that the ALJ did not expressly define "normal" work breaks, but based on context, the ALJ appears to have meant "regularly scheduled." *See, e.g.*, *Neyer v. Comm'r, Soc. Sec.*, 2015 WL 5773239, at *2 (D. Md. 2015) (affirming an RFC limitation to "carrying out simple tasks in two-hour increments (which can be accommodated by regularly scheduled breaks)"). Even if that is not precisely what the ALJ meant, the semantic range of "normal work breaks" is not broader than the evidence underlying the ALJ's opinion. Specifically, Dr. Heiser concluded that Watson "can carry out simple tasks on a regular basis to complete a normal workweek." Tr. 110. Based on Dr. Heiser's opinion and the other evidence that the ALJ discussed, it is clear that the ALJ had substantial evidence underlying its conclusions.

about six hours in a typical workday, citing 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, at *3).

Watson replies that the State Agency physicians' analysis was erroneous. Watson relies on a section of the MRI report that neither those physicians nor the ALJ mentioned:

> L5-S1: There is a moderate focal central/left paracentral disc protrusion that is abutting the descending left Sl nerve root in the lateral recess. It also indents the thecal sac anteriorly with air is mild narrowing of the thecal sac. Mild neural foraminal narrowing is also present. Mild facet arthropathy.

Tr. 388. Given this medical evidence, plus her complaints regarding sitting, Watson argues that the ALJ had to at least explain how he determined Watson was able to sit for six hours in an eight-hour workday.

The Court agrees with the government that there was substantial evidence supporting the ALJ's analysis. While some evidence could be interpreted to support a sitting limitation, other evidence supports no such limitation. The ALJ sifted through the relevant evidence, including the medical opinions and Watson's subjective complaints. Ultimately, the ALJ was persuaded by evidence of Watson's activities and the opinions of various doctors, including those of the State Agency. Tr. 110. The Court is not in a position to require the Administration to provide more. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive[.]").

II. **The ALJ's Evaluation of Watson's Subjective Complaints Was Supported By Substantial Evidence.**

Watson argues that the ALJ's analysis of Watson's subjective complaints was erroneous. *See* Pl.'s Mot. at 13–17. The ALJ concluded that Watson's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" but nonetheless concluded that the evidence was inconsistent with her actually suffering those symptoms. Tr. 106. Watson asserts this conclusion was wrong because she made *many* complaints consistent with those symptoms. *See* Pl.'s Mot. at 15.

And Watson argues that the ALJ failed to provide an accurate and logical bridge from the evidence to support the credibility determinations and failed to consider pertinent evidence.

The government contends the ALJ's analysis was supported by substantial evidence.[4] The government details the ALJ's discussion of Watson's medical condition, her treatment and improvement, and her various activities. *See* Def.'s Mot. at 23–27; *see also* Tr. 105–10. The ALJ compared all of this evidence with Watson's subjective complaints and concluded Watson's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 106. The ALJ noted that evidence, including Watson's activities, suggested she was more capable than her complaints suggest, and the ALJ gave weight to the opinion evidence of various physicians. Tr. 106. Based on all this evidence, the ALJ ultimately concluded Watson's complaints did not support further work limitations.

The Court concludes that substantial evidence supports the ALJ's findings. While Watson is correct that there is some evidence to support her claims that the symptoms were more severe than the ALJ found (including her complaints), there is also evidence to support the ALJ's findings. The ALJ made clear that he was ultimately persuaded by evidence of Watson's activities and the opinions of various physicians. Tr. 106, 105–10. Because a reasonable person could be persuaded by such evidence, the Court must conclude that substantial evidence supports the ALJ's findings. *See* 42 U.S.C. § 405(g).

---

[4] The government also asserts that Watson argues the ALJ applied an inappropriate legal standard. While Watson's argument on this front was difficult to follow, the Court does not understand Watson to have made such an argument. To the extent she did, the Court agrees with the government that the ALJ did not legally err in its analysis.

**Conclusion**

For the above reasons, the Plaintiff's Motion will be denied and the government's Motion will be granted. An order will issue contemporaneously with this opinion.

DATE: August 19, 2022

_____
CARL J. NICHOLS
United States District Judge